UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION AT LAFAYETTE

MARYANITA PATINO,

    Plaintiff,

    v.                                          Case No. 4:22-CV-00038-GSL

SANDY PINES GOLF CLUB, et al.,

    Defendants.

**<u>OPINION AND ORDER</u>**

This matter is before the Court on Defendants' Motion for Summary Judgment. [DE 41]. For the following reasons, the Court GRANTS Defendants' motion.

**A. Factual History**

Defendant SP19 is a restaurant and bar located on the premises of Defendant Sandy Pines Golf Course. [DE 45, ¶ 4]. Plaintiff was an employee for Defendants from March 23, 2018, to December 17, 2020, and she worked as a server and part-time bartender. [*Id.* at ¶ 6]. At some point during her employment, Plaintiff began a romantic relationship with a regular customer of the SP19 restaurant. [*Id.* at ¶ 28]. Around mid-September of 2020, Plaintiff sent a naked photograph of herself to the customer. [*Id.* at ¶ 29]. Subsequently, that customer shared the naked photograph with one of Defendants' employees, who was employed at the golf pro shop. [*Id.* at ¶ 31]. That employee later showed the photograph to two of Plaintiff's managers. [*Id.* at ¶ 32].

In the beginning of November of 2020, Plaintiff discovered for the first time that the customer, with whom she had been romantically involved, had sent the naked photograph to Defendants' golf pro shop employee. [*Id.* at ¶ 50]. Shortly after, on November 10, 2020, Plaintiff's attorney contacted Defendants' management about this situation. [*Id.* at ¶ 53]. In his e-

mail, Plaintiff's attorney stated that Defendants' golf pro shop employee had showed the photograph to Plaintiff's two managers, but he did not mention subsequent circulation of the photograph or any harassment by other employees. [*Id.*].

On November 17, 2020, in a discussion with her direct supervisor, Plaintiff complained about the photograph being spread to other employees and about harassment by these employees because of the situation. [*Id.* at ¶ 59]. Plaintiff's supervisor reported the situation to Defendants' upper management, and Defendants fired the golf pro shop employee. [*Id.* at ¶¶ 62, 80, 81].

In early December, Plaintiff's supervisor began reporting to Defendants' upper management concerns about Plaintiff's behavior and hostility. The reported behavior included stomping around, kicking open doors, rocking back and forth, throwing fits, getting short with other employees and customers, having a crazy stare, not talking to her co-workers or managers, not attending to her tables, and, overall, creating an uncomfortable and toxic work environment. [*Id.* at ¶¶ 84–91]. Ultimately, Defendants terminated Plaintiff on December 17, 2020.

On May 13, 2022, Plaintiff filed the instant action. [DE 1]. She brings three claims under Title VII based on sex discrimination, sexual harassment and a hostile work environment, and retaliation. [*Id.*]. She seeks reinstatement of employment and damages. [*Id.*].

### B. Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant "bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of" the evidence that "demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To survive a properly supported motion for summary judgment, "the nonmoving party must present evidence

sufficient to establish a triable issue of fact on all elements of its case." *McAllister v. Innovation Ventures, LLC*, 983 F.3d 963, 969 (7th Cir. 2020).

In deciding a motion for summary judgment, the court may "not weigh conflicting evidence, resolve swearing contests, determine credibility, or ponder which party's version of the facts is most likely to be true." *Stewart v. Wexford Health Sources, Inc.*, 14 F.4th 757, 760 (7th Cir. 2021). Instead, the court's only task is "to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Id.* (internal citation omitted). If there is no genuine dispute of material fact, then summary judgment is appropriate, and the movant is entitled to judgment as a matter of law. *Id.*

## C. Discussion

As a preliminary matter, Plaintiff challenges the affidavits attached to Defendants' instant motion. [DE 46, page 2]. Plaintiff argues that these are "self-serving affidavits . . . . [A]nd clearly written for the sole purpose of summary judgment, directly contradict[ing] the prior deposition testimony of those witnesses . . . ." [*Id.*]. However, Plaintiff doesn't explain or provide examples of how the affidavits contradict prior deposition testimony or other evidence in the record.

Generally, the "sham affidavit rule" is applied when a "*nonmoving* party seeks to create a genuine issue of triable fact in order to resist" a motion for summary judgment. *Craig v. Wrought Washer Mfg., Inc.*, 108 F.4th 537, 544 (7th Cir. 2024). Courts may disregard these "sham affidavits" when they contradict prior deposition testimony, thus preventing the nonmoving party from manufacturing an issue of fact solely for the purpose of surviving this stage of the litigation. *Id.* Courts have recognized that the "sham affidavit rule" is not typically invoked by the *moving* party. *Id.* (quoting *Ludwig v. United States*, 512 F. Supp. 3d 874, 878 (N.D. Ill. 2021)). When the *moving* party introduces a post deposition affidavit, Courts are encouraged to

permit the supplemental filing, particularly when it is "required to achieve clarity and accuracy." *Id.*

Here, Defendants are the movants for the instant motion, and their affidavits summarize and clarify various parties' deposition testimonies. On their face, the affidavits don't contradict any deposition testimony or other evidence in the record. Plaintiff states in a conclusory fashion that these affidavits are self-serving and contradict prior deposition testimony, but Plaintiff fails to expound on this assertion or provide any examples of contradictions. Plaintiff fails to demonstrate that these affidavits contradict any deposition testimony, so the Court will consider them in the instant motion for summary judgment.

In addition, Plaintiff argues that the affidavits should be disregarded because the affiants are employees of Defendants, and, therefore, the affidavits are self-serving. [DE 46, page 3]. However, courts should still consider self-serving affidavits if they meet the requirements of evidence on summary judgment. *Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 506 (7th Cir. 2004). Here, the affidavits meet those requirements: they are based on personal knowledge, and they set forth specific facts relevant to Plaintiff's claims and Defendants' defenses. *See id.* (holding that the lower court abused its discretion in disregarding parts of a self-serving affidavit even though the affidavit met the requisite evidentiary requirements); *see also* Fed. R. Civ. P. 56(e). For this reason too, the Court will consider the affidavits in its analysis on the instant motion.

Conversely, Plaintiff filed affidavits in support of her response to the instant motion that are inadmissible. [DE 47]. The affidavit by Nichole Loskill consists of her discussing matters that occurred at SP19 when she was no longer employed at SP19. [DE 47-10]. Similarly, the affidavit by Charles DeKoster includes statements by him regarding events that he did not witness or lacked an adequate factual foundation to infer as such. [DE 47-15]. Therefore, these

4

affidavits are not admissible because they are not based on personal knowledge of the affiants. Fed. R. Civ. P. 56(c).

### 1) *Sex Discrimination Claim*

In Count 1 of the Complaint, Plaintiff alleges that "Defendants took adverse employment actions against Plaintiff based on her sex in violation of Title VII, including when [Defendants] terminated her employment." [DE 1, ¶ 35]. Under the *McDonnell Douglas* framework, to succeed on a Title VII sex discrimination claim, Plaintiff has the burden to establish a *prima facie* case of sex discrimination by showing that 1) she is a member of a protected class, 2) she was meeting her employer's legitimate expectations, 3) she suffered an adverse employment action, and 4) similarly situated employees who were not members of her protected class were treated more favorably. *Anderson v. St.*, 104 F.4th 646, 652 (7th Cir. 2024) (referencing the burden-shifting framework for employment discrimination cases set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). If Plaintiff successfully establishes a prima facie case for sex discrimination, then the burden shifts to Defendants to "articulate[] a legitimate, nondiscriminatory reason for the adverse employment decision." *Id.* at 653 (quoting *Smith v. Chicago Transit Auth.*, 806 F.3d 900, 905 (7th Cir. 2015)). The burden then shifts back to Plaintiff to demonstrate that Defendants' stated reason for firing her was pretextual. *Id.* That final burden "requires demonstration by a preponderance of the evidence that the [Defendants'] stated reasons for [Plaintiff's] firing were *false*, not that they were unfair or baseless." *Id.*

Plaintiff argues that she "is not bound by the *McDonnell Douglas* burden-shifting framework to prove her claim(s)." [DE 46, page 22]. Plaintiff relies on the Seventh Circuit decision in *Ortiz* to assert that the determinative question in this case is whether the evidence presented would permit a reasonable factfinder to reach a conclusion of discrimination. [*Id.*]

(citing *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 766 (7th Cir. 2016)). To the extent that *Ortiz* holds that this is the determinative question in discrimination cases, Plaintiff is correct. *See Reives v. Illinois State Police*, 29 F.4th 887, 892 (7th Cir. 2022). But that question is not discordant with the *McDonnell Douglas* framework. "*McDonnell Douglas* is entirely consistent with [the Seventh Circuit's] holding in *Ortiz*, and it remains an efficient way to organize, present, and assess evidence in discrimination cases." *Reives*, 29 F.4th at 892 (cleaned up); *see Ortiz*, 834 F.3d at 766 ("Today's decision does not concern *McDonnel Douglas*" and "is consistent with *McDonnell Douglas* and its successors."). Regardless of which approach the Court uses, Plaintiff's sex discrimination claim cannot survive summary judgment.

Under the *McDonnell Douglas* burden-shifting framework, Plaintiff fails to establish a prima facie case for sexual discrimination under Title VII. Specifically, she fails to demonstrate that there is a triable issue for the second and fourth element of the prima facie case. The second element requires that Plaintiff show that she was meeting her employer's legitimate expectations. *Id.* In her response to the instant motion, Plaintiff asserts that she had no disciplinary issues in the two years prior to her termination, but the Court finds that the undisputed evidence in the record contradicts this. [DE 46, page 18]. First, in 2018, Plaintiff received four formal disciplinary write-ups from her supervisors. [DE 50, ¶ 221]. These write-ups involved Plaintiff leaving her shift early without telling her supervisor, not properly attending to her tables, receiving numerous customer complaints, showing up late to her shifts, and sometimes not showing up to her shift at all. [DE 47-3, pages 18–31]; *see* [DE 42, page 3]. At least one of these write-ups indicated that she had already been verbally warned about her subpar conduct. [DE 47-3, page 25]. Almost all the write-ups indicated that termination could be the next consequence if her subpar conduct continued. [*Id.* at 18–31].

While the parties agree that Plaintiff's performance marginally improved in 2019, "significant concerns with tardiness and absenteeism" returned in 2020. [DE 42, page 3]. For the months of June, July, August, and September, Plaintiff was late to 46% of her scheduled shifts. [*Id.*]. According to Plaintiff's direct supervisor, Plaintiff had "among the worst, if not the worst, tardiness record of any of [Defendants'] employees." [DE 43-3, ¶ 16]. Plaintiff does not dispute her record of tardiness but alleges, without evidence, that other employees were late just as often as her. [DE 49, ¶¶ 269–70]. Plaintiff does admit that her direct supervisor had to have conversations with her about her lack of punctuality. [*Id.* at ¶ 269]. In fact, Defendants argue that Plaintiff's tardiness record was one of the reasons why Plaintiff was passed over for a promotion in favor of another female server. [DE 45, ¶ 17].

Further, Defendants allege that in the weeks leading up to Plaintiff's termination, she engaged in severe antisocial behavior. [DE 42, page 4]. Her direct supervisor stated that:

> Sometime after my November 17 call with Ms. Patino, she began acting up at work. On what seemed like a daily basis, Ms. Patino stomped around, kicked open doors, and rocked back and forth with a very hostile attitude. She was mad all the time. She also had stopped talking to me. In essence, she made me and the other SP19 employees feel uncomfortable.

[DE 43-3, ¶ 53]. Other employees also stated that Plaintiff "displayed a bad attitude," "got short with everyone," "threw a fit over everything," "went around with a crazy stare," "made everyone walk on eggshells," and "made work uncomfortable." [DE 43-7, ¶¶ 19–20]; [DE 43-8, ¶¶13–14]. Plaintiff's response brief fails to rebut most of these allegations. [DE 46, page 19]; [DE 49, page 10]. At the very least, Plaintiff concedes that her behavior was "not very friendly" and "could be intimidating to other people." [DE 46, page 19]; [47-7, page 225].

The undisputed evidence shows that Plaintiff was chronically late and exhibited inappropriate behavior that led to a toxic environment. Plaintiff quotes, as "direct evidence that Ms. Patino was performing satisfactorily," her supervisor stating that Plaintiff was meeting performance expectations and that Plaintiff had "no issues" until her termination date. [DE 46, page 20]. The latter comment is incorrect. The Court discussed earlier Plaintiff's issues relating to her tardiness, disciplinary write-ups, and other behavioral concerns. Further, Plaintiff's supervisor stated that "[Plaintiff] was a good server" but also that "[s]he wasn't showing up to work every day on time. She was late almost half of the time." [DE 47-3, page 16]. Further, her supervisor said that Plaintiff was "not a good example" for the other employees, and that this was one of the reasons why she wasn't promoted. [*Id.* at 31]. Thus, because of her tardiness and behavioral issues, Plaintiff failed to meet her employer's legitimate expectations.

The fourth element of the prima facie case requires that Plaintiff show that she was treated less favorably than a similarly situated employee outside her protected class. *See Reives*, 29 F.4th at 892. Plaintiff does not need to identify an employee that is "identical in every conceivable way" but the employee "must be directly comparable to the plaintiff in all material respects." *Id.* (cleaned up). At a minimum, Plaintiff "must at least show that the comparators (1) dealt with the same supervisor, (2) were subject to the same standards, and (3) engaged in similar conduct." *Anderson*, 104 F.4th at 653. "Whether a comparator is similarly situated is typically a question for the fact finder, unless, of course, the plaintiff has no evidence from which a reasonable fact finder could conclude that the plaintiff met his burden on this issue." *Igasaki v. Illinois Dep't of Fin. & Pro. Regul.*, 988 F.3d 948, 958 (7th Cir. 2021).

Here, Plaintiff provided no evidence from which a reasonable factfinder could conclude that Plaintiff met her burden to find a similarly situated employee. Plaintiff only asserts one other employee as a comparator for the purpose of establishing her prima facie case. [DE 46, page 23]. This purported comparator is different from Plaintiff in several material aspects. For one, they have completely different jobs: the purported comparator is a line chef and Plaintiff is a waitress. Their jobs involved different responsibilities, duties, and standards. Also, Plaintiff does not allege that the purported comparator had the same history of discipline, tardiness issues, insubordination, customer complaints, and other behavioral issues. Plaintiff presented no evidence concerning a similarly situated employee from which the Court could draw a comparison. Thus, Plaintiff failed to assert a prima facie case for sex discrimination under the *McDonnell Douglas* framework. *See Igasaki*, 988 F.3d at 958.

Plaintiff's claim also fails under her proposed "determinative question" test. *Reives*, 29 F.4th at 893. Under this test from *Ortiz*, the Court is to ask, "whether the totality of the evidence shows discrimination, eschewing any framework or formula." *Igasaki*, 988 F.3d at 958 (citing *Ortiz*, 834 F.3d at 765). As previously discussed by the Court, Plaintiff failed to identify a similarly situated employee outside of her protected class that received more favorable treatment than her. Plaintiff does not provide any evidence that suggests that she received disparate treatment because of her sex. Moreover, Plaintiff fails to rebut the evidence introduced that supports the conclusion that her termination was the result of her own subpar performance: tardiness, absenteeism, insubordination, customer complaints, and intimidating behavior causing a toxic environment. *See id.* The summary judgment record shows that Plaintiff's sex was not the basis of her termination.

### 2)  *Sexual Harassment Claim*

In Count 2 of the Complaint, Plaintiff alleges that "Defendants subjected Plaintiff to severe and/or pervasive harassment and a hostile work environment based on her sex." [DE  1, ¶ 43]. To be successful on this Title VII claim, Plaintiff must establish that: "(1) her work environment was objectively and subjectively offensive, (2) the harassment she complained of was based on her gender, (3) the conduct was so severe or pervasive as to alter the conditions of employment and create a hostile or abusive working environment, and (4) there is a basis for employer liability." *Anderson*, 104 F.4th at 652 (quoting *Swyear v. Fare Foods Corp.*, 911 F.3d 874, 880 (7th Cir. 2018)). Plaintiff faces a high bar to establish actionable conduct under a theory of sexual harassment based on a hostile work environment. *Swyear*, 911 F.3d at 881. On summary judgment, courts consider factors such as the severity and frequency of the discriminatory conduct, whether the conduct was physically threatening or humiliating, and whether it unreasonably interfered with the employee's work performance. *Major v. Indiana*, No. 17-CV-12, 2018 WL 5830742, *3 (N.D. Ind. Nov. 7, 2018) (quoting *McKenzie v. Milwaukee Cnty.*, 381 F.3d 619, 624 (7th Cir. 2004)); *Anderson*, 104 F.4th at 652. But the Seventh Circuit has "made clear that Title VII is not a general code of workplace civility, nor does it mandate 'admirable behavior' from employers." *McKenzie*, 381 F.3d at 624 (internal citations omitted).

Plaintiff's claim fails to demonstrate conduct of the requisite severity or pervasiveness required for a sexual harassment claim. "In order to analyze the severity or pervasiveness of the conduct, a plaintiff must come forward with specific facts; vague non-specific testimony will not do." *Anderson v. Mott St.*, No. 20 C 07721, 2023 WL 5227391, at *5 (N.D. Ill. Aug. 14, 2023) (citing *Brooks v. Avancez*, 39 F.4th 424, 442 (7th Cir. 2022)). Here, most of Plaintiff's claims are vague and unsupported by evidence. For example, Plaintiff testified in her deposition that two

female servers spread a rumor about Plaintiff engaging in sexual activities on the golf course,

and at another time, one of those same female servers left a banana on the kitchen counter as

some sort of sexual innuendo. [DE 46, page 6]. Or in another incident, Plaintiff testified that one

of the managers called her a sexual name in front of several people. [*Id.*]. Plaintiff also testified

that a line chef wrote a derogatory word on a plate to be served by Plaintiff. [*Id.*]. However,

Plaintiff fails to provide specific details of these incidences, i.e. when they occurred. As such,

these incidences cannot be viewed as favorable in the analysis of the severity or pervasiveness of

the purported misconduct. *See Brooks*, 39 F.4th at 442.

Plaintiff does identify one other incident that is central to this action. Plaintiff claims that

one of Defendants' employees showed a naked photograph of Plaintiff to two of her managers.

[DE 46, page 15]. Subsequently, she claims that this photograph was circulated amongst all the

employees and customers, and she was ridiculed for it. [*Id.*]. While it is undisputed that

Plaintiff's two managers saw this photograph, Plaintiff does not identify any other employees or

customers who saw it, demonstrate that any subsequent harassment occurred, or show that her

two managers had knowledge of subsequent circulation or harassment. [DE 49, page 4]. The

only evidence of further circulation of the photograph is by Plaintiff herself, who admits that she

is the one who initially shared the photograph with a customer, and that she subsequently showed

the photograph to three other employees. [DE 50, ¶ 145]. By itself, this allegation relating to the

photograph does not meet the requisite severity or pervasiveness needed for a sexual harassment

claim. *See Ridge v. Indiana Univ. Health Arnett, Inc.*, 350 F. Supp. 3d 707, 718 (N.D. Ind. 2018)

(holding that an inappropriate video of the plaintiff that "went viral" among employees was not

enough to establish a hostile work environment claim).

Plaintiff attempts to demonstrate subsequent harassment by claiming that on one occasion, another employee—a line chef—asked her if she had been tanning. [DE 46, page 5]. On another occasion, Plaintiff claims that the line chef asked her if she knew the difference between a condom and a glove. [*Id.*]. Plaintiff argues that these comments relate back to the photograph that was allegedly circulated. [*Id.*]. Accepting these allegations as true, they lack the frequency and severity required to establish a sexual harassment claim. *Anderson*, 104 F.4th at 652 ("While unfortunate, such off-color comments, isolated incidents, teasing, and other unpleasantries are not enough for a Title VII sexual harassment claim." (internal citation omitted)); *see Brooks v. Avancez*, 39 F.4th 424, 442 (7th Cir. 2022) ("The insults [the plaintiff] received may be juvenile, insulting, and boorish, but no reasonable jury could find that they were so frequent or pervasive as to create a hostile work environment"). And even if any of the conduct alleged is "so severe or pervasive," Plaintiff fails to demonstrate that the conduct "altere[d] the conditions of [her] employment" or "unreasonably interfered with [her] work performance." *See Anderson*, 104 F.4th at 652.

Plaintiff's claim also fails to establish another element of the prima facie case for sexual harassment: basis for employer liability. *Id.* To demonstrate a basis for employer liability, Plaintiff must prove "either (1) that a supervisor participated in the harassment that created the hostile work environment or (2) that [Defendants were] negligent in discovering or remedying harassment." *Montgomery v. Am. Airlines*, Inc., 626 F.3d 382, 390 (7th Cir. 2010). Plaintiff makes no allegation that her supervisor participated in any harassment, so her only option to establish employer liability is to prove that Defendants were negligent. As part of Plaintiff's demonstration of Defendants' purported negligence, she "must demonstrate that [she] made a concerted effort to inform [Defendants] of the [] harassment [she] was allegedly experiencing . . .

to put [Defendants] on constructive notice." *Id.* Here, the undisputed facts show that Plaintiff first put Defendants on constructive notice, regarding the naked photograph, on November 12, 2020. [DE 45, ¶ 54]. That is when Plaintiff's attorney first contacted Defendants' upper management that one of its employees possessed a naked photograph of Plaintiff and was showing it to others. [*Id.*]. Before this date, Plaintiff had never complained to management, or anyone, about the photograph. [*Id.* at ¶ 63]. Subsequently, Defendants terminated the employee involved in showing Plaintiff's photograph to others. [*Id.* at ¶ 81]. After this incident, Defendants did not observe any harassment or hear anything more about the photograph, and Plaintiff did inform Defendants about anything of that sort. [*Id.* at ¶ 82]. Because Defendants took appropriate remedial action after Plaintiff informed them about the incidents at issue, Plaintiff fails to demonstrate that they were negligent.

Because Plaintiff cannot show that the alleged conduct was severe or pervasive, and she cannot establish a basis for employer liability, summary judgment in favor of Defendants is proper.

### 3) *Retaliation Claim*

In Count 3 of the Complaint, Plaintiff alleges that "Defendants took adverse employment actions against Plaintiff based on and in retaliation for her protected activity . . . including when it terminated her employment." [DE 1, ¶ 49]. To succeed on a Title VII retaliation claim, Plaintiff "must prove that (1) she engaged in an activity protected by the statute; (2) she suffered an adverse employment action; and (3) there is a causal link between the protected activity and the adverse action." *Anderson*, 104 F.4th at 654 (quoting *Giese v. City of Kankakee*, 71 F.4th 582, 590 (7th Cir. 2023)). If Plaintiff establishes a prima facie case of retaliation, Defendants may rebut with a legitimate non-discriminatory reason for taking an adverse employment action

against Plaintiff. *Id.* If Defendants meet this burden, Plaintiff must demonstrate that the purported reasons for termination are pretextual. *Id.* Evaluation of pretext focuses on whether Defendants "honestly believed the stated reason for firing." *Id.*

Plaintiff's claim of retaliation fails because she does not establish a prima facie case. Specifically, Plaintiff does not show that there was a causal link between her reporting sexual harassment to her manager and her subsequent termination. To establish a causal link, Plaintiff "must offer evidence that retaliatory motive was a but-for cause of the challenged employment action." *Vavra v. Honeywell Int'l, Inc.*, 106 F.4th 702, 706 (7th Cir. 2024) (cleaned up). In support of establishing but-for causation, Plaintiff makes two main arguments. First, Plaintiff argues that the timing of her termination was suspicious. [DE 46, page 12]. She alleges that she complained to her direct supervisor about sexual harassment on November 17, 2020, and she was subsequently terminated by Defendants on December 17, 2020. [*Id.*]. A one-month gap between reporting sexual harassment and the subsequent termination is too wide of a time frame to support an inference of causation. *Daza v. Indiana*, 941 F.3d 303, 309 (7th Cir. 2019) ("For an employer's actions to be on the close heels of an employee's conduct, thus allowing an inference of causation based on timing alone, we 'typically allow no more than a few days to elapse.'" (quoting *Kidwell v. Eisenhauer*, 679 F.3d 957, 966 (7th Cir. 2012))). In general, evidence of suspicious timing is insufficient to establish a retaliatory motivation. *Vavra*, Inc., 106 F.4th at 706. Even more so when there is an alternative explanation for the subsequent termination. *Id.* This is the case here: Plaintiff's chronic tardiness and inappropriate workplace behavior are Defendant's purported reasons for terminating Plaintiff, and these reasons are supported by the record.

Second, Plaintiff also argues that Defendants failed to follow its own disciplinary policies when she was terminated. [DE 46, page 18]. While "an employer's unusual deviation from standard procedures can be circumstantial evidence of retaliatory intent," that is not the case here. *Vavra*, 106 F.4th at 706. She argues that Defendants' alleged failure to follow its progressive disciplinary policy, or an alternative three strike system, is evidence of retaliation. [*Id.* at 18]. Plaintiff's argument ignores the undisputed evidence in the record. Namely, Defendants' disciplinary policy prescribed that punishments were at the discretion of management based on the severity of the conduct. [DE 50, ¶¶ 127–128]. Possible punishments for the first instance of any misconduct could range from a verbal warning to immediate termination of employment. [*Id.*]. Plaintiff also makes several other arguments on this issue, including an alleged lack of anti-harassment training, ambiguous statements made during the termination process, a replacement employee, and comparators. [DE 46, page 11]. These arguments are all speculative in nature, not substantially briefed, lack support in the record, or do not lend much support to Plaintiff's case. Moreover, they do not help establish Plaintiff establish a prima facie case or justify an inference of sexual discrimination.

Even if Plaintiff established a prima facie case for sexual discrimination, she cannot demonstrate that Defendants purported reasoning for her termination was pretextual. As the Court has already discussed in its analysis on Plaintiff's sexual discrimination claim, Plaintiff was a subpar employee. Her employment history is riddled with disciplinary issues, chronic tardiness, and customer complaints. [DE 42, page 3]. Moreover, in the weeks leading up to her termination, Plaintiff's behavior spawned a toxic work environment for all the other employees. [*Id.* at 4]. Since Plaintiff fails to demonstrate pretext, her claim of retaliation fails. [*Id.* at 4].

## <u>CONCLUSION</u>

The Court hereby GRANTS the Defendants' Motion for Summary Judgment [DE 41].

The Court DIRECTS the Clerk of Court to enter judgment against Plaintiff and in favor of the

Defendants. The Plaintiff takes nothing by her Complaint.


SO ORDERED.

ENTERED: September 3, 2024

/s/ GRETCHEN S. LUND
Judge
United States District Court

16